O'BRIEN v. BARKLEY et al.

(Supreme Court, General Term, Third Department. May 8, 1894.)

1. WILLS—CONDITIONS SUBSEQUENT—PUBLIC POLICY.
    Testator devised his estate to his executors, in trust for his daughter for life, "provided however, and on the express condition, that she do not

at any time after my decease" live with one J., her husband. The will further directed that, in case the daughter should at any time after testator's decease live with J., the estate held in trust should be immediately divided among certain persons, "provided, however, that if the said J. shall depart this life, or otherwise cease to be the husband of my said daughter, and she shall at no time after my decease" have lived with him, the trustee shall immediately transfer to the daughter the property held in trust. No disposition was made of the estate after the death of the daughter. *Held*, that the proviso was a condition subsequent, and was void as against public policy, and the daughter took the life estate discharged of the condition.

2. TRUSTS—VALIDITY—FURTHERANCE OF UNLAWFUL SCHEMING.

The trust attempted to be created by such will having no other object than to effectuate testator's design to separate his daughter and her husband is wholly void.

Action by Eleanor E. O'Brien against John Barkley, as executor, and others, to construe a will. Defendants move for a new trial on a case and exceptions, as provided by Code Civ. Proc. § 1001. Denied.

The opinion of Mr. Justice KELLOGG at special term is as follows:

This action is brought to construe the last will and testament of Robert Shaw, deceased, late of the county of Washington, in this state. The will was executed December 5, 1891; and the testator, in January following. some six weeks after execution of the will, died, leaving, him surviving, a widow and a daughter, the plaintiff in this action, as the only next of kin and heirs. He died the owner of real estate in that county valued at $10,000, and personal estate valued at $18,000. The widow survived the testator only a few days. A short time prior to the execution of the will, the daughter (plaintiff) married James H. O'Brien; but at the time of the execution of the will, and at the time of the decease of the testator, she was living with her parents, separate and apart from her husband. The first clause of the will relates to a division of property held in common with testator's sister, and the duties of this clause required only the exercise by the executors of a trust power. The second clause of the will relates to provisions for his wife, rendered, however, inoperative by her decease. The whole estate is covered by the third clause of the will, the widow being dead. The third clause reads: "All the rest and residue of my estate, real and personal, to be set apart by my executors, and held in trust, to take the rents and profits thereof, and apply the net annual income to the use of my daughter, Eleanor Elizabeth, for and during her natural life: provided, however, and on the express condition, that she do not, at any time after my decease, associate, cohabit, or live with one James O'Brien. And in case she shall, at any time after my decease, associate or cohabit or live with the said James O'Brien, then and in such case the said real and personal estate so held in trust under this third clause of my will shall be immediately divided, transferred, paid over, and delivered, share and share alike, to and among Margaret McNeil and Jane S. McCurdy, children of my late brother-in-law Daniel McCurdy; William W. Shaw, son of my brother. John Shaw; Isabel Beveridge and Ann Beveridge, children of my brother-in-law David Beveridge: provided, however, that if the said James O'Brien shall depart this life, or otherwise lawfully cease to be the husband of my said daughter, and she shall at no time after my decease have associated or cohabited or lived with him, the said James O'Brien, then—that is, upon his decease, or upon his otherwise lawfully ceasing to be the husband of my said daughter, and my said daughter then surviving, then and in that case, and on the first happening of either—the said trustee shall forthwith transfer and deliver to my said daughter, all and singular, the whole of the real and personal estate then remaining in his hands under and by virtue of the third clause of my will." There is no residuary clause or gift over, other than the one to testator's nephews and pieces, above quoted, in these words: "And in case she shall, at any time after my decease, associate or cohabit or live with the said James O'Brien, then and in such case the said real and personal estate shall be immediately divided, transferred, paid over, and delivered, share and share alike,

to and among," etc. In case the life estate created for the daughter should continue during her life, no disposition is made of the fee.

The provision of the will respecting the one-third set apart for the widow, and in these words: "If my said wife shall survive my said daughter, and the latter not have received lawfully, or been lawfully entitled to receive, the said estate so held in trust under said third clause hereof, as aforesaid, then the estate so held in trust under said second clause shall, at the decease of my said wife, be transferred and delivered to the persons hereinafter named as entitled to receive the same under this, the third clause hereof,"—is of no value, except to discover the intention of the testator, since the widow is dead, and the daughter survives. But the testator fails to say to whom this third of his estate shall go in case the daughter dies before the widow, and dies "lawfully entitled;" that is, the divorced wife or the widow of James O'Brien. It is significant, in that it shows the intention of the testator not to give to any of these nephews and nieces any portion of his property, except upon the one condition, and immediately upon the happening of that condition, viz. the "association" or "cohabitation" of the daughter with her husband after the decease of the testator. They take nothing upon the death of the daughter; nothing upon the extinction of the life estate by death. If the daughter should, by the terms of the will, be entitled to the income and profits of the estate during her life,—that is, should not associate or cohabit with her husband after the testator's death,—and James O'Brien should not "lawfully cease" to be her husband, what then becomes of the corpus of the estate? The testator has not told us. It does not, in that case, by the terms of the will, go to these nephews and nieces. That is clear. To discover what is called the "pole star" in construction of a will, viz. the intention of the testator, it is quite as important to examine the void provisions of a will as it is to examine the valid portions. The general scheme in the testator's mind can be discovered in no other way. Taking this will as a whole, it is not difficult to read the mind of the testator. He wishes his daughter to possess his property—to possess it and enjoy it—at the earliest possible date, but he wishes to accomplish, also, another purpose,—a continued separation between his daughter and her husband; and he wishes a speedy divorce, unless a merciful Providence shall sooner serve, by taking James O'Brien hence. It is unnecessary to say that his second purpose was contra bonos mores, and hence an unlawful and void purpose, and this part of his intention must fail. If his wishes that his daughter should have his property can still be carried out, that will be all of the testator's intention which can be made effectual. The will gives to the daughter the rents and profits of his estate during her natural life. Here there can be no difference of opinion, I think, as to the actual vesting in the daughter of this life estate. The gift took effect at the instant the testator died. The proviso or condition is something which must occur after his decease. The testator says so in words: "Provided, however, on the express condition that she does not, at any time after my decease," etc. This, I think, must be interpreted to be a condition subsequent. The estate vests at once in the daughter, subject to being divested on the happening of the condition, "cohabitation or association" with James O'Brien after the testator's decease. This construction seems to be borne out by the interpretation by the court of similar language in wills in many cases. It was said in Scott v. Guernsey, 48 N. Y. 106, "The law favors a construction which will not tend to the disinheriting of heirs, unless the intention to do so is clearly expressed." Where the actual and primary intent, as collected from the whole instrument, is in harmony with the policy of the law, the courts will aid it by construction, but where it is subversive of that policy the same principle favors a construction which will defeat it. Paterson v. Ellis, 11 Wend. 294; 2 Jarm. Wills, 766. In Burnett v. Strong, 26 Miss. 124, the court says: "Courts have shown no disposition to apply the strict rules applicable to conditions precedent in covenants and other contracts to last wills and testaments, and have looked rather to the circumstances of the bequest, and the nature and object of the conditions, so as to give the devisee the full benefit of the testator's bounty." In Waters v. Tazewell, 9 Md. 292, it is said: "Unqualified restrictions on marriage are discouraged, on grounds of public policy; and instead of aiding them, by applying liberal rules of construction, the

courts have been disposed to construe them strictly, and in such manner as will favor the person on whom the restraint is laid." It will be sufficient to make the condition subsequent if the testator appears, from the context of his will, to have intended an immediate interest to pass to the object of his bounty. 1 Rop. Leg. 766. If a legacy be given to A., payable at twenty-one, or marriage, but if he marry under that age, without consent of his executors, then the legacy is to C., the legacy will vest immediately in A., and the condition is subsequent. Id. In Weathersby v. Weathersby, 13 Smedes & M. 685, the provisions of a will were: "I give and bequeath to my son Ludovick my servants Tom and Lucy, in trust, and upon the following conditions." The conditions, being emancipation, were held by the court to be void. The conditions were held to be subsequent, and the "consequence is that the trust on condition is defeated, and the estate is absolute in the legatee." The word "provided" is a technical word. It has always been held that a devise to A., provided he should or should not perform certain acts, is a devise upon a condition subsequent, and the estate vests, subject to being divested, if he does not perform as required. Wright v. Tuttle, 4 Day, 313; Rich v. Hotchkiss, 16 Conn. 409, 419; Wheeler v. Walker, 2 Conn. 196; Hooper v. Cummings, 45 Me. 359; Chapin v. School Dist., 35 N. H. 445; Hayden v. Inhabitants of Stoughton, 5 Pick. (Mass.) 528. Whether the condition is precedent or subsequent depends on the order of time in which the performance is required. Acherley v. Vernon, Willes, 157; Doe v. Scudamore, 2 Bos. & P. 297. Heath, J., says: "The question always is whether the thing is to happen before or after. If before, the condition is precedent; if after, it is subsequent." It is the giving ad interim, directly and at once, to the legatee, of the rents and profits, which indicates the purpose to vest the legacy at once. In re Hart's Trusts, 3 De Gex & J. 195. In Taylor v. Mason, 9 Wheat. 326 (Marshall, C. J.), the testator gave his property to a trustee, to be turned over to the oldest male heir of his nephew, J. T. M., "on the following terms,"—that he change his name to "A. Barnes." On his refusing, then to the next male heir, on same terms, etc. It was held that the condition was subsequent, and not precedent. The estate vested in the oldest male heir, to be divested on nonperformance of the condition. In Finlay v. King's Lessee, 3 Pet. 246 (Marshall, C. J.), the language of the will was: "In case of having no children, I then leave and bequeath all my real estate, at the death of my wife, to William King, son of brother James King, on condition of his marrying a daughter of William Trigg and my niece Rachel, his wife, lately Rachel Finlay, in trust for the oldest son or issue of said marriage; and, in case such marriage shall not take place, I leave and bequeath said estate to any child, giving preference to age, of William and Rachel Trigg that will marry a child of my brother James King, or of sister Elizabeth, wife of John Mitchell, and their issue." William Trigg and Rachel, his wife, never had a daughter; hence, there was no marriage such as the testator contemplated. Marshall, C. J.: "In the case under consideration, the testator does not give his real estate to William King on his marrying the daughter of William and Rachel Trigg, but at the death of his wife, on condition of his marrying a daughter of William and Rachel Trigg. * * * He gives the estate at that time without requiring that the condition annexed to it should be previously performed. The estate then vests in possession, whether the condition on which it was to depend be or be not performed. * * * This is clearly a condition subsequent. * * * A devise to A., on condition that he shall marry B., if uncontrolled by other words, takes effect immediately. * * * The condition is subsequent." In Thomas v. Howell, 1 Salk. 170, 4 Mod. 67, the father, having three daughters, constituting his heirs at law, devised to one of them a messuage, called "Lowhorn," "upon condition that she marry T. T., and, if she refuse to marry him, then over to trustees, in trust, to be divided among the three coheiresses, equally or otherwise, as they please." The marriage became impossible by reason of the death of T. T. under 12, and the question was which to apply to it,—the law of conditions, or the law of limitations. The court held that the law of conditions was applicable, and being a condition subsequent, and having become impossible, the devise was absolute. In Jennings v. Gower, Cro. Eliz. 219, the court said, if a man devise a term to A., and that, if his wife suffers the dev-

isee to enjoy it for three years, she shall have all his goods, as executrix, but, if she disturbs A., then he makes B. his executor, his wife is executrix presently; for though, in grants, the estate shall not vest till the condition precedent is performed, it is otherwise in a will, and this shall not be construed as a condition precedent, but only a condition to abridge the power of the executrix if she perform it not. In Hayden v. Inhabitants of Stoughton, 5 Pick. 528, the will read: "Both of the above pieces of land I give to said town for the purpose of building a schoolhouse for the use of a free grammar school: provided, said schoolhouse is built by said town within one hundred rods of the place where the meetinghouse now stands." This was held to be a condition subsequent, and the fee to the lands vested immediately in the town, and did not rest in abeyance until the schoolhouse should be built. In Conrad v. Long, 33 Mich. 78, the will devised the lands in question to testator's mother for life. After her death the lands were to go in conformity with the following clauses in the will: "To my brother Frederick S. Conrad, I give and bequeath the one half so remaining, and the other half I give and bequeath to my sister Elizabeth Long, upon this condition: If, at any time subsequent, she should conclude not to live with her present husband, Henry Long, as his wife. But, if she continue so to live as the wife of said Henry Long until her death, then and in that case I give and bequeath all my property, real and personal, remaining after the burial of my mother, to my aforesaid brother, Frederick S. Conrad." The court says: "It is claimed on behalf of Conrad that the condition mentioned is a condition precedent, and is void, and that no estate can attach. That the condition is void is admitted. It is contrary to the plainest principles of public policy to separate, or to provide in this way for a separation of, husband and wife, as the condition to the enjoyment of an estate. But we find here nothing in the nature of a condition precedent. The language is very blind, but it shows that the ultimate devise over to Frederick S. Conrad was to depend on whether Elizabeth Long continued to live with her husband until her death. * * * Taking the whole clause into account, we can only find in it a forfeiture of an estate on breach of condition, and not a condition precedent."

I cannot, in the light of these decisions, see how it can be successfully contended that the condition or proviso in the third clause of the will of Robert Shaw is a condition precedent, or a conditional limitation. The bare reading of the condition shows the intent of the testator to have been that his daughter should be divested of the estate here provided for her by some act of the legatee "after" his decease, and not that she was to do some required thing before she could receive any of the rents and profits of his estate. The estate for life having vested in the daughter immediately upon the decease of the testator, and the condition subsequent being void, it must remain in her for life. The courts have held in some cases, respecting legacies,—and I find no reported case holding to the contrary,—that even where the condition is precedent, and void as against public policy, the legatee takes the legacy free and pure notwithstanding, and in all cases of realty the devisee takes where the condition is subsequent. The case of Hawke v. Euyart (Neb., 1890), reported in 46 N. W. 422, is a case similar to this, though the language in the will in that case was far from being as favorable to the legatee and devisee as in the case at bar. The will turned the estate, real and personal, over to trustees. The provisions aim to force a separation of a son from his wife. The executors, in case a separation is accomplished at end of ten years, are to turn over to the son the estate: if not accomplished, are to turn the estate over to the other children of the testator. The court says: "The question is one in restraint of the continuation of the marriage relation. * * * I think there can be no doubt, either as a question of reason from moral premises, or from legal authority, not only that such condition is void, but, having been declared void, it leaves the bequest of the testator· operative the same as though the conditions had not been sought to be made by will." In Wilkinson v. Wilkinson, 12 L. R. Eq. 604, the testatrix provided by her will a legacy to her niece Elizabeth, and then provided it should pass to others, unless, within eighteen months after the decease of the testatrix, the legatee should cease to reside at Skipton,—a place where her husband resided, and did business. The court held the conditions void, as a manifest attempt to

induce the legatee to leave her husband, and also held that the legatee took the legacy freed of the condition. Lord Macclesfield, in Mitchel v. Reynolds, 1 P. Wms. 181, says: "All the instances of conditions against law, in a proper sense, are reducible under one of three heads: (1) Either to do something that is malum in se, or malum prohibitum; (2) to omit to do something that is a duty; (3) to encourage such crimes and omissions. Such conditions as these the law will always, and without any regard to circumstances, defeat." In Wren v. Bradley, 2 De Gex & S. 49, the testator directed certain moneys to be invested upon trusts expressed as follows: To pay and apply income, etc., "and to my daughter Ann Jeffreys Wren, the wife of Abram Wren, in case she should be living apart from her said husband, the said Abram Wren, and shall continue to do so during the lifetime of my said wife, an annuity of £30. * * * And I do further direct that if, at any time, the said Ann Jeffreys Wren should cohabit with said Abram Wren, the said annuity hereinafter given to her shall, during the time she shall so cohabit, absolutely cease and determine." The vice chancellor: "Assuming that the husband and wife were living separate at date of the will, and at the death of the testator were living together, my impression is that it will be more in accordance with authority to decide in favor of the gift." The gift was held to be absolute, and freed from the condition and all limitations. In Tennant v. Braie, Toth. 77, there was a bequest of a sum of money made to the daughter of the testator "if she would be divorced from her husband." The gift was held good, and the condition void. In Brown v. Peck, 1 Eden, 140, a testator directed his executors to pay to a niece, Rebecca, "if she lived with her husband, £2 per month, and no more; but if she lived from him, and with her mother, £5 per month." The condition was held to be bad, and that she was entitled to £5 per month. The cases mentioned (Wilkinson v. Wilkinson, Wren v. Bradley, Tennant v. Braie, and Brown v. Peck) have been frequently referred to by the courts in this country, and accepted as the settled law. "The rules of the civil law being that where a condition precedent is originally impossible * * * or illegal, as involving malum prohibitum, the bequest is absolute, just as if the condition had been subsequent." 2 Jarm. Wills, 524. In Cooper v. Remsen, 5 Johns. Ch. 461, the chancellor says: "There is a wide difference between a bequest to a daughter during her separation from her husband, when the separation was then actually existing, without being procured by the testator, and a legacy to her if she lived apart from her husband; for that would be to hold out a temptation to a separation, which would be contra bonos mores. The legacy would be simple and pure in the latter case, according to the decision of Lord Worthington in Brown v. Peck, 1 Eden, 140." In Potter v. McAlpine, 3 Dem. Sur. 108, the will made the enjoyment by Charles B. Potter of his one-fifth part of the income of the estate conditional upon his not living with, or in any manner contributing to the support of, his wife. The court held: "This condition is illegal and void. It requires the violation of a statute. It is contrary to public policy. The condition is evidently precedent in its character, and while, at common law, it would doubtless work a forfeiture of the gift, yet in equity, and under the civil law, though the condition is void, the gift is good." And the court here refers to 1 Rop. Leg. 757; Tennant v. Braie; Brown v. Peck. It is true this is a decision of a surrogate court, but it is in accord with all previous decisions, and is referred to as authority by Justice Learned, at the general term of this district, in Whiton v. Harmon, 54 Hun, 552, 8 N. Y. Supp. 119. In Whiton v. Harmon, Id., the testatrix, by will, gave her real estate to her son "for and during the term of his natural life, or while he shall live separately from his present wife. On his decease, or when he shall again live with his present wife," the property should go to his nieces. Learned, J., says: "Here the testatrix seeks to bribe the husband to continue the abandonment of the wife." Held, that the condition was bad, and "the son took the property during life," only the condition of the will that the property should, "at his death," go to the nieces, being counted good; and the court cites Potter v. McAlpine; Tennant v. Braie; Brown v. Peck; Conrad v. Long; Wilkinson v. Wilkinson, and Wren v. Bradley. In Keily v. Monck, 3 Ridg. App. 205, legacies charged on the realty, in aid of the personal estate, were given to the testator's daughters, payable on their respective days of marriage: provided, however, that if

either married without consent, or a man not seised of an estate in fee, or of perpetual freehold, of the annual value of £500, her legacy should not be paid, but should sink as in the text. One of the daughters married with consent, but her husband had not the requisite estate. Lord Clare was of the opinion that she was nevertheless entitled to the legacy; "that, even if it were held that the legacy were a charge on the realty, the condition was illegal at common law, being too generally in restraint of marriage." To the like effect may be cited Otis v. Prince, 10 Gray, 581; Randall v. Marble, 69 Me. 310; Maddox v. Maddox's Adm'r, 11 Grat. 804; Williams v. Cowden, 13 Mo. 211; Waters v. Tazewell, 9 Md. 291; Spencer v. Negro Dennis, 8 Gill, 314; Barksdale v. Elam, 30 Miss. 694.

The daughter, then, is here secure of the rents and profits of the entire estate, real and personal, without limitation as to time, or during her life. It will be seen, by the language of the will, that the trust attempted to be created by the third clause had for its sole object the furtherance of that unlawful scheme of the testator, viz. a separation of husband and wife. It was not the intention of the testator that the trustees should hold his property during the life of the daughter. It was to be held by them only until the wife cohabited with her husband. Then the trust was, by the terms of the will, to cease. If the daughter were sufficiently tempted, and should fail in her duty toward her husband, and should "lawfully cease" to be the wife of James O'Brien, then the trust was to cease. The trust is an important feature of the scheme. Through the trust the testator's scheme was to be worked out. The scheme begins with the trust, and when the scheme is executed the trust is to cease. The trust has no other object than to aid the consummation of this unlawful purpose. This is blazoned on every line of the third clause of the will. The clause which creates the trust defines its object, and fixes its duration. None of the purposes of this trust can be accomplished. The scheme is unlawful, and the trust unlawful. It is no answer to say that the statute of uses and trusts permits the lodging of the legal estate in a trustee, to take the rents and profits, and pay them over to another. In such a case the object of the trust is lawful when its duration is fixed by the life of the beneficiary. The purpose is single. But that is not the purpose of the testator in this case, nor the purpose of this attempted trust. The testator declares that he has no other object in creating the trust, or keeping the possession of the estate out of his daughter, except to coerce her into a breach of duty. As soon as she shall "lawfully cease" to be the wife of James O'Brien, possession and fee are to be hers, and the trust to cease. Upon the first cohabitation with her husband after testator's death, the trust is to cease. As soon as it is discovered that the trust has failed to coerce the wife into doing what the law disapproves, the will provides that the trust shall cease. The rule declared by Justice Allen in Knox v. Jones, 47 N. Y. 398, in this language, "A void trust, which is separable from other valid trusts, may be cut off when the trust thus defeated is independent of the other dispositions of the will, and subordinate to them, and not an essential part of the general scheme," is not violated, I think, in holding that this trust created by the third clause of this will is wholly void. There are no parts here. The trust is an entirety. There is no valid object apparent. There was none in the mind of the testator. It was a single scheme, and every part of it was unlawful in its aim and object. And there can be no valid trust without a lawful object. To attempt a separation, and say the trust shall have effect during the life of the daughter, —possession of this estate shall be held by these trustees during her life,—is simply to defeat the plain intention of the testator. They were to hold it only until the first act of cohabitation of the daughter with her husband after the decease of the testator. Whether that act has yet occurred, or not, is immaterial. It is to be presumed the wife has faithfully performed her duties toward her husband; and if she has failed, being induced by this offer of reward by the testator, she is no more entitled to the reward than if she had not failed. Cooper v. Remsen, 5 Johns. Ch. 461. In either case, the trust, following the intent of the testator, ceased there,—must have ceased the moment the law would presume cohabitation after testator's death. The trust was not necessary to the life estate in the daughter. She is entitled to the rents and profits, but obtains these as well without the trust as with. The trust medium

is not essential to her rights in this respect. If the bequest of the rents and profits and income of the entire estate to the daughter—the trust being void—requires the possession and management of the estate as an incident to the full enjoyment, I see no reason why that may not properly follow.

The necessary conclusion from the foregoing is that all the testator legally effected by his will was: First. The power in trust to separate property held in common with his sister, as set forth in this first clause. Second. The trust for the benefit of the widow is set forth in the second clause, which is, however, immaterial now, as the widow died before this trust could have practical effect, and within a few days of the testator. The widow's portion, therefore, fell into the body of the estate, to be controlled as the other portion, so far as it lawfully might, by the provisions of the third clause. Third. The creation of an estate for life in the daughter, in the whole, with the necessary incident to the right of enjoyment of the rents and profits, viz. possession and management. The failure of the testator to make by a residuary clause, or by devise or gift over on the death of his daughter, a disposition of the remainder, leaves that remainder to descend to the heir as in case of intestacy. Considering the apparent natural affection of the testator for his only child, and the manifest great anxiety in him that she, and she alone, should have, possess, and enjoy, in full fruition, all of his estate, a careful analysis of this singular will creates and leaves upon the mind the impression that the conclusion arrived at, and stated above, is just the conclusion the testator intended. He doubtless hoped, by a blustering parade of rewards and punishments, to induce the child to desert her husband; but he carefully provides, by condition subsequent, a void trust, and a failure to devise or make gift over of the remainder, that, in any event, his great desire that his daughter should possess and enjoy forever his whole estate shall not be defeated. And this impression gains force when it is known that the testator was aided in this connection by astute and experienced counsel, doubtless well informed as to the condition of the will being unlawful and void, and the effect thereof, and that, in the absence of a devise or gift over of the remainder, the daughter, as only heir, would inherit, and so the life estate, freed from the trust would merge with the fee, and the estate would be so saved, in any event, to the daughter, clear and untrammeled.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Smith & Wellington (G. B. Wellington, of counsel), for plaintiff. James Gibson, for defendants.

PER CURIAM. After a careful examination of the briefs presented by counsel, and the authorities therein cited, we have reached the conclusion that the action was correctly disposed of by the court below. The elaborate and able review of the facts and law of the case by the learned trial judge renders it unnecessary for us to write an opinion. The motion should be denied, without costs to either party. All concur.